# Davis v. Petrinovich.

*Bill in Equity to Enjoin Collection of Municipal License Tax.*

1. *Pendency of prior suit for same cause of action; abatement.*—A bill filed by one tax payer to enjoin the collection of an illegal tax does not estop another from maintaining a similar suit, although the latter may have contributed something to the expenses of the first suit.

2. *Bicycle; what is; regulation of use by State.*—A bicycle is included within the definition of a carriage or vehicle, and is subject to like regulation.

3. *License tax on bicycles; construction of charter of Mobile.*—The charter of the city of Mobile (Acts, 1886-87, p. 240, as amended Acts, 1894-95, p. 387, sections 21 and 40) conferring on the general council authority to impose a license tax upon carriages and other vehicles used in the transportation of goods and merchandise, and for hire at public stands, and kept and used by livery stables for hire, does not authorize a tax upon bicycles used only by their owners for pleasure, and not for hire ; and such a tax imposed upon bicycles so used, is null and void and not collectible.

4. *Construction of charter; right of tax payer to injunction.*—Under the charter of the city of Mobile (Acts 1886-87, p. 223) any tax payer may enjoin by bill in chancery without bond the tax collector of the city from collecting any unauthorized or illegal tax imposed by the general council ; and such tax being levied and the collector charged with the duty of collecting it, the tax payer need not wait until a levy has been made upon his property, or his creditors garnished, before seeking an injunction.

[Davis v. Petrinovich.]

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WILLIAM H. TAYLOE.

The mayor and general council of the city of Mobile, on March 16, 1896, adopted a general license ordinance, levying a license tax against all trades and occupations carried on in said city, and included therein a license tax on bicycles.

The appellant in this case, Franklin P. Davis, a citizen and tax payer of the city of Mobile, filed the present bill against the appellee, Frank Petrinovich, tax collector of the city of Mobile, under the provisions of section 45 of the act granting a charter to the city of Mobile (Acts 1886-87, p. 223), to enjoin the collection of said license tax. The complainant owned and used a bicycle, solely and exclusively for his pleasure and convenience, and his bicycle was not used in any way for the transportation of goods or merchandise, and was not kept for hire at any place in the city of Mobile. The other facts of the case are sufficiently stated in the opinion.

The defendant moved to dissolve the temporary injunction which was issued, and to dismiss the bill for want of equity. This motion was considered on the final hearing.

Upon the final submission of the cause, on the pleadings and proof, the chancellor decreed that the motions were well taken; and ordered that the cause be dismissed, and that the injunction theretofore issued be dissolved. From this decree the complainant appeals, and assigns the same as error.

McINTOSH & RICH, for appellant.—1. The undisputed facts are that the bicycle owned by appellant was not used in the transportation of goods and merchandise or kept for hire. The ordinance levying a license tax thereon was unauthorized, null and void.—Acts, 1894-95, p. 387, § 7; *Baldwin v. City Council*, 53 Ala. 437; *Selma v. Selma Press &c. Co.*, 67 Ala. 430. Power to license, tax and regulate horse railroads, hackney carriages, etc., does not extend to taxation of private vehicles used by a merchant or manufacturer.—*St. Louis v. Grone*, 46 Mo. 574; 1 Dillon on Municipal Corp., (4th ed.) 478; *Hannibal v. Price*, 29 Mo. App. 280; 13 Amer. & Eng. Encyc. of Law, 530, 531; *City of Eufaula v. Mc-*

*Nabb*, 67 Ala. 588; *City of Mobile v. Richard & Son*, 98 Ala. 594; 15 Amer. & Eng. Encyc. of Law, 1041.

2. The bicycle owned by appellant does not belong to the class of vehicles upon which the city of Mobile had authority to levy a license tax.—Acts, 1894–95, 384, § § 4, 7; *Baldwin v. City Council*, 53 Ala. 437; *Selma v. Selma Press &c. Co.*, 67 Ala. 430; *St. Louis v. Grone*, 46 Mo. 574; 2 Amer. & Eng. Encyc. of Law, 736.

3. The remedy by injunction is specially authorized by the act creating the corporation of the city of Mobile, and the bill was properly filed.—Acts, 1886–87, 249, § 45.

PETER J. HAMILTON, *contra.*—1. The proved plea of pending suit by Rolston estops this complainant; Rolston having sued for all in interest, and this complainant admitting in his deposition that he was party to Rolston litigation.—*Barker v. Walters*, 8 Beav. 97; 3 Brick. Dig. 2, § 23; 1 Dan. Ch. Pr., star page 659.

2. Complainant on his bill has an adequate remedy at law, as the charter says that unauthorized licenses are absolutely void and not collectible.—Acts 1886–87, 249, § 45. The amount involved is one dollar, which is below the chancery jurisdiction; for this complainant has voluntarily amended so as to sue only for himself, and his injury is at most one dollar.—3 Brick. Dig., 331, § 20; *Campbell v. Conner*, 78 Ala. 211; *Ulbricht v. Eufaula Water Co.*, 86 Ala. 594.

3. Section 45 of the charter, on which complainant relies to make this case an exception, while permitting injunction of a tax in a proper case, on its very face does not include licenses. Unauthorized licenses and taxes are declared void; but when injunctions are named "tax" is mentioned, while "license" is omitted.—Acts, 1886–87, p. 249.

4. A bicycle is a "carriage."—*Geiger v. Turnpike Road*, 31 Atl. Rep. 918; Webster, Worcester, Dictionaries, "Carriage;" Clementson on Wheelmen, § § 99, 102.

5. Regulation may be by license, and is in fact a higher power embracing license.—Beach Pub. Corp., § 1252, note 4; Horr & Bemis Mun. Ord., § 256. License may be exacted of vehicles dangerous from any cause.— Horr & Bemis Mun. Ord., §§ 229, 246. It is not necessary to prove this small sum reasonable. The amount of a

[Davis v. Petrinovich.]

license is presumed reasonable.—Beach Pub. Corp., § 1255.

HARALSON, J.—1. The fact of the pendency of another suit by one Rolston against the defendant in this case, in the same court with this suit, and in reference to the same subject matter, is not well taken. It was admitted on the trial of this case, that the case of Rolston was instituted in the Mobile chancery court, on the 24th of March, 1896 ; that it "was substantially the same in object and almost identical in language with that of *Davis v. Petrinovich*, *Tax Collector*, (this case), and that it was brought in behalf of all parties in interest by Hugh Rolston, but was amended on the hearing, so as to be only on his own account," and that the "said Rolston bill was answered, evidence taken and case submitted and argued on the pleadings and testimony, at the same time with this, the Davis case." What disposition, if any, has been made of the Rolston case,— whether or not it has been decided,—is not shown ; nor is it shown, that said cause was submitted on the same evidence even, as that on which this cause was submitted and tried. That cause, then, confessedly, is not between the same parties as those to this case, though relating to the same subject matter, is between different parties ; is not shown to be on the same evidence on which this case was tried, and is still pending undetermined in said court. All that is shown is, that in said suit, the plaintiff in this cause contributed one dollar towards paying the expenses of conducting it. These facts furnished no ground for abating the present suit.—*Foster v. Napier*, 73 Ala. 595.

2. That a bicycle comes properly within the definition of a carriage or vehicle, we appehend can no longer admit of dispute. A vehicle is defined to be, "Any carriage moving on land, either on wheels or runners ; a conveyance ; that which is used as an instrument of conveyance, transmission, or communication."—Century Dictionary. And a carriage in the same lexicon is defined as, "That which is used for carrying or transporting, especially on or over a solid surface. A wheeled vehicle for the conveyance of persons."

In *Taylor v. Goodwin*, 4 Q. B. Div. 228, it was held, that a person riding a bicycle on a highway at such a

42

pace as to be dangerous to passers by, may be convicted under an act to prevent any person riding any horse or beast, or driving any sort of carriage furiously, so as to endanger the life or limb of any passenger. The court said: "It may be that bicycles were not known at the time when the act passed, but the legislature clearly desired to prohibit the use of any sort of carriage in any manner dangerous to the life or limb of any passenger. The question is, whether a bicycle is a carriage within the meaning of the act. I think the word 'carriage' is large enough to include a machine such as a bicycle, which carries the person who gets upon it, and I think such person may be said to drive it."

In *Williams v. Ellis*, 5 Q. B. Div. 175, it was held, in construction of the act allowing tolls to be collected at a gate on a turn-pike road, that a bicycle was not embraced within the purview of the act imposing a toll of 6 pence, "for every    *    *    sociable, chariot, berlin, landau," &c., or other such carriages, for the reason, that the act imposed a toll on particular carriages which were described as, "or other such carriages," which latter must be *ejusdem generis* with the carriages previously specified. The case of *Taylor v. Goodwin*, was referred to in this later decision with approval.

It is a matter of common knowledge, that the bicycle is now used for the purpose of the conveyance of parties owning or hiring the wheels, largely for the purpose of pleasure and exercise, and that in cities and towns, especially, they are coming to be used for the transportation, from point to point, of packages of goods and merchandise such as they are fitted to carry. What further possibilities await the bicycle as a means of the transportation of persons, goods and merchandise, it is not important now to consider or predict. They remain to be developed. On principle and authority, however, it may be said, that it has taken its place safely with the vehicles and carriages of the time, entitled to the rights of the road and street equally with them, and is subject in its use to the same liabilities. Its use upon the highways of the country and upon the streets and sidewalks of towns and cities may be regulated under legislative and delegated municipal authority.—Porter on Roads & Roadside, 157; Elliott on Roads and Streets, pp. 331, 635; Horr & Bemis on Municipal Police Ordinances,

§ 247; Clemenston on Road Rights & Liabilities, §§ 99, 106-109; *Mercer v. Corbin*, 117 Ind. 450; *Holland v. Bartch*, 120 *Ib*. 46, and authorities cited; *Thompson v. Dodge*, 58 Minn. 555.

3.   Section 26 of the charter of Mobile, (Acts, 1886-87, p. 240), provides, that "the general council is authorized and empowered to levy and collect for each year of its existence, upon all real and personal property, and all subjects of State taxation within said city of Mobile, except the tax levied on polls, a tax of not exceeding six-tenths of one per cent of the value of such property, or subjects of taxation during the year preceeding that for which the general council may assess and levy the tax above provided for." By section 21 of the amended charter, (Acts, 1894-95, p. 387), the regulation of "hackney coaches, carriages, wagons, carts and drays," was conferred upon the general council, and section 40 of said amended charter provides, "That the said general council shall, besides the tax heretofore authorized, [Sec. 26], have the authority to assess and collect from all persons and corporations, trading and carrying on any business, trade or profession, by an agent or otherwise, within the limits of said corporation, a tax license which shall be fixed and declared each year by an ordinance of said corporation, and the license so said shall be issued and the amount imposed shall be collected as may be provided by ordinance of said corporation. *   *   *   A vehicle license may be imposed in addition to business license, provided that said license shall only apply to vehicles used in the transportation of goods and merchandise, and vehicles used for hire at the public stands; *   *   *   * that in addition to the license tax imposed on livery stables, there shall be an additional license tax not exceeding one dollar for every carriage, and fifty cents for every buggy owned and used for hire by such livery stable."

4.   On the 16th of March, 1896, the general council of Mobile, adopted a general license ordinance, providing, "That a license tax for the fiscal year, begining on the 16th March, 1896, and ending on the 14th March, 1897, is hereby imposed and assessed on each person, firm, association, or corporation trading, or carrying on any business, trade or profession, by agent or otherwise, within the limits of the city of Mobile," followed by a

schedule of special licenses required in each instance, among others, specifying bicycles,—"including tags furnished for same,—$1.00."

The imposition of such a license tax, it has been well said, is such as may be referred to the taxing power, or to the police power,—to the latter, when its object is merely to regulate, and the amount levied is merely to pay the expenses of enforcing the regulation, including reasonable compensation for the additional expense of municipal supervision over the particular business or vocation; and to the taxing power, if its main object is revenue. If, however, it appears that the legislature has not bestowed the right to tax under either of these delegated powers, but has omitted it, the imposition of the tax is without legislative sanction and void.—*City of St. Louis v. Green*, 7 Mo. App. 468; s. c. 70 Mo. 562; 1 Dillon on Munic. Corp., § 357; Burroughs on Taxation, § 77; *Van Hook v. City of Selma*, 70 Ala. 361.

5. The only authority, then, appearing in the charter of said city, for levying a distinctive license tax on vehicles of any description, apart from the general police power to regulate them, is confined by the terms of the act,—section 21,—to "hackney coaches, carriages, wagons, hacks and drays," and to such only of these, as are used in the transportation of goods and merchandise; to vehicles used for hire at the public stands, and on carriages and buggies owned and used for hire by livery stables. If a business man in Mobile pays a business license tax, as he may be required under the charter to do, he may be also required, under the charter, to pay an additional license-tax on any vehicle he uses in his business, in the transportation of goods and merchandise, and he is relieved from such tax on other vehicles he may own. It was not within the contemplation of the legislature, as is evident from the text, that an inhabitant of that city should be required to pay such a tax on his pleasure carriage or vehicle, of whatever description, if not used in the business of transportation of goods and merchandise. The policy of the legislature seems to have been to confine the license tax on vehicles, whether imposed under the police or taxing power, to such of them as are used in the transportation of goods and merchandise, and those kept for hire, and to relieve all other carriages from such a tax.—*The City*

*of St. Louis v. Green*, 46 Mo. 574; *City of Hannibal v. Price*, 29 Mo. App. 280.

6. In the charter (Acts, 1886–87, p. 223), in section 45, after limiting the rate of taxation, it is provided: "Nor shall said general council levy any tax for any other purpose than those specially stated in this act, and any tax or license charges other than those authorized by said sections 26 and 40 [of the charter] which said general council may levy or attempt ·to levy, shall be null and void and and not collectible, and any tax-payer may enjoin by bill in chancery, and restrain without bond, the tax-collector of the city of Mobile from collecting any tax which said general council may levy or attempt to impose beyond the aforesaid tax and license charges. The provisions of this act shall not be enlarged, or extended so as to be made applicable to or for any other purposes than those stated in this act." It is manifest, therefore, that the levy of said bicycle tax was outside of the powers of the general council to levy, and was illegally levied.

It is provided again, that the taxes levied shall have the force and effect of a judgment against the person assessed therewith, to which a preference is given over all other securities and incumbrances, and for the collection of which a lien is given on all the real and personal property of the tax-payer; that the mayor shall certify on the tax-book, that said taxes have been fixed and levied, and append his warrant, directed to the tax collictor, authorizing and commanding him to collect the taxes so levied, and shall deliver said tax book and warrant to the tax collector, whose duty it is made forthwith to notify the public by· advertisement for thirty days in some newspaper published in the city, that he is ready to receive payment of the taxes so levied; that the tax collector shall be charged with the whole amount of the assessed taxes for the year; that he shall issue garnishment process for the collection of taxes and licenses as on judgment returnable to any court having jurisdiction of the amount; that after the expiration of ninety days from the first publication of the tax collector's notice, as aforesaid, he may levy upon and seize any personal property, if any there be, or if there be none, or not sufficient personal property, then upon the real estate of the delinquent tax-payer; and that he shall be charged

with and accountable for the whole amount of the assessed taxes for the year, and shall only discharge himself from such accountability by showing that the amounts unpaid could not have been collected by the exercise of the means given him.—Sections 31, 32, 36 and 39 of original charter, Acts, 1886–87, pp. 242–43; amendatory act, 1894–95, § 6, p. 387.

Without these provisions, it may be, that the tax being illegal, there would be an adequate remedy at law against its collection, and chancery would not enjoin, (High on Injunctions, §§ 543, 545); and that twenty dollars being the fixed minimum of chancery jurisdiction, the court would not entertain a bill to enjoin the collection of a tax of one dollar.—*Hall v. Cannte,* 22 Ala. 650; *Campbell v. Conner,* 78 Ala. 211. But, the statute takes the case from the influence of any such rules as are applicable to the general exercise of the jurisdiction of equity courts; and any tax-payer is authorized by the charter, as we have seen, to enjoin the levy and collection of *any* illegal tax levied and assessed by the general council. The act in terms bestows the right of injunction without bond, in favor of the tax-payer, whenever the general council "may levy or attempt to impose [any tax or license] beyond the aforesaid tax and license charges," which may not be rightfully levied and collected. It is idle to say, that the general council have not levied and attempted to impose this illegal tax, or that the collector has no intention of collecting the same, because it is illegal. It has been levied, and the collector is charged with it, and by the terms of the charter, must account for and pay it himself unless he has been unable to do so after he has used all means conferred on him for its collection, and the collector in this suit is seeking to maintain the legality of said levy. The wrong done the appellant was in the imposition of said illegal tax, and it was not incumbent on him to delay filing his bill until the further wrong of a levy on his property had occurred, or his creditors were garnished. If so, the very purpose of the legislature in granting relief against such unlawful menaces of the tax-payer's rights would thereby be defeated.—1 High on Injunctions, § 18.

7. The proofs showed that appellant was a tax-payer of the city; that this illegal tax had been levied, and

[Manier & Co. v. Appling.]

there was an attempt to impose it on his property ; that the collector had made the publication as required by the statute ; that the bicycle was his private carriage, used alone for the purposes of pleasure, and not for the transportation of goods and merchandise.

The bill should not have been dismissed for want of equity, but the motion to dismiss it on that account should have been overruled, and the injunction perpetuated.

Reversed and a decree will be here rendered, restoring the injunction that had been granted, and making it perpetual.

Reversed and rendered.