RUDELL *v.* GRAND RAPIDS COLD-STORAGE CO.

1. BAILMENTS—COLD STORAGE—NEGLIGENCE—EVIDENCE.
     Defendant's agent, while soliciting the patronage of plaintiff
     for cold storage, was shown by plaintiff a small cold-storage
     room, in which she kept what she could of her butter, and told
     that it kept well at a certain temperature, but that she knew
     nothing about cold-storage plants. In an action against de-
     fendant for damage to butter in storage, *held*, that evidence
     that plaintiff's butter kept well in her private storage room,
     and that other butter of like grade, left in defendant's stor-
     age plant at the same time as that of plaintiff, was dam-
     aged, was admissible on the issue of defendant's negligence.

2. SAME—DAMAGES—PLAINTIFF'S DUTY—INSTRUCTIONS.
     In an action for damage to butter in the storage plant of defend-
     ant, where it appeared that, at the time plaintiff was offered
     but little less than the market price for the butter, it was
     not clear to just what extent it had been injured, and the
     period of bailment had not expired, and there was no request
     on the part of defendant to take the butter from its custody,
     and no offer to take it off the hands of plaintiff at any price,
     the court properly instructed the jury that it was the duty of
     plaintiff to use good faith, good judgment, and reasonable
     effort in disposing of the butter, with no more loss than was
     necessary, and it was not error to refuse an instruction that it
     was plaintiff's duty to accept the price offered.

3. SAME—RECEIPT—LIABILITY.
     A cold-storage receipt for butter, providing that the storage
     company would furnish any desired temperature, but would
     not guarantee results, all goods being stored at owner's risk,
     and exempting the company from liability for loss or damage
     by fire, water, ratage, leakage, breakage, frost, or to perish-
     able property, did not, where no temperature was agreed
     upon, relieve the company from its obligation to use due care
     and diligence in keeping the proper temperature, and in
     not exposing the butter to injurious odors from fruits and
     vegetables.

Error to Kent; Wolcott, J. Submitted April 5, 1904.
(Docket No. 10.) Decided May 17, 1904.

*Assumpsit* by Eva C. Rudell against the Grand Rapids Cold-Storage Company for damage to butter in storage. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff, a maker of and dealer in butter, deposited a large quantity in the cold-storage plant of the defendant for preservation for future sales.   Her butter was of a very high grade, and made and kept for sale during the summer at the pleasure resorts of Northern Michigan.   It was deposited with and taken charge of by the defendant daily from the 14th of May to the 3d of June following.

The entire contract rested in parol.   Each party gave her and his version of the arrangement in the various conversations that were had prior to the first deposit.   The parties disagree radically as to the terms of the agreement. On May 21st, defendant gave to the plaintiff a receipt for the butter which had been stored before that time.   This receipt recited that it was " subject to the conditions printed on the back."   The condition material to this suit reads as follows :

" All storage taken by this company subject to the following terms :

" This company will furnish any desired temperature, but will not guarantee results, all goods being stored at owner's risk.   *   *   *

" All loss or damage by fire, water, ratage, leakage, breakage, frost, or to perishable property, at owner's risk."

Other similar receipts were subsequently given, and also one which did not contain this condition.   These were given to enable the plaintiff to use them at the bank to secure loans.   On June 4th it was discovered that the butter had deteriorated, either by too high a temperature, or by odors from fruits and vegetables.   The object of this suit is to recover damages for the negligence of the defendant in the care of the butter.   Plaintiff gave evidence tending to support her claim.   The defendant gave evi-

dence tending to show that it agreed with the plaintiff to keep the temperature at 35 degrees, and that it had substantially complied with that agreement. The disputed issues of fact were found against the defendant. The further facts, so far as material, will be stated in connection with the points raised.

*Ward & Brown* and *Wolcott & Perkins*, for appellant.

*William H. Eastman* (*Myron H. Walker*, of counsel), for appellee.

Grant, J. (*after stating the facts*). 1. Defendant's agent, while at plaintiff's house soliciting her patronage, was shown some of the butter, the manner in which it was put up, and a small cold-storage room in which she kept what butter she could. That butter was made and put up in substantially the same manner as was that deposited by her with defendant. Defendant's agent testified that she told him that she had no difficulty in keeping butter in that room. Plaintiff was permitted to show that that butter kept well. She was also permitted to show that the butter of one Monteith, deposited in the defendant's plant at the same time with that of the plaintiff, became damaged. There was no error in admitting this evidence. Plaintiff testified that she told defendant's agent that she knew nothing about cold-storage plants. She showed him how she kept her butter of the same kind as that about which they were contracting, and told him that it kept well at a certain temperature. It was competent to show that that butter kept well, and also that other butter of like grade, deposited in the defendant's storage plant at the same time, was damaged. *Townsend* v. *Rich*, 58 Minn, 559 (60 N. W. 545). If other butter under like conditions kept well while that of plaintiff did not, it would naturally lead to the conclusion that the fault was inherent in the butter, and not to any negligence of defendant. The converse of the proposition would be equally true.

2. It is insisted that the record conclusively shows that plaintiff, soon after discovering that the butter was damaged, was offered within a half a cent of the then market price, and that it was her duty to accept the offer. The court refused to so instruct the jury, and instructed them that it was the duty of the plaintiff to use good faith, good judgment, and reasonable effort in disposing of the butter, with no more loss than was necessary. We think the evidence does not sustain defendant's claim. The witnesses were not fully agreed as to the extent of the injury. There was evidence that it was slight, and not easily detected except by those of experience. Defendant's engineer thought that by lowering the temperature he could freeze the bad taste out. The term of bailment had not expired. Defendant did not ask plaintiff to take the butter from its custody and dispose of it. It did not offer to take it off her hands at any price. The butter was permitted to remain, evidently in the hope that the injury might be repaired. When it was ready for sale, plaintiff placed it upon the market at some of the customary places for her trade, but her patrons refused to use it. There was evidence that she then disposed of it at the best terms she could. We think the request was properly refused, and the question of damages under correct instructions submitted to the jury.

3. It is insisted that the receipt and the printed conditions on the back of it constituted the contract between the parties. It appears that the case was submitted to the jury upon that theory. We will dispose of the question as though the receipt constituted the contract, because both parties seemed to try the case upon that theory. We do not, however, thereby establish the rule that a parol contract for storage can be changed by a receipt issued after the property was deposited, when the storage receipt contains terms different from that agreed upon by parol, without the assent of both parties. This receipt does not, in terms or by implication, exempt the defendant from acts of negligence. The language, " This company will

furnish any desired temperature, but will not guarantee results," refers to the temperature alone. If a temperature was agreed upon and maintained, plaintiff could not recover, although the property was ruined in consequence thereof. There is nothing in the receipt or in the condition which attempts to relieve the defendant from its obligation to use due care and diligence in keeping the proper temperature, and in not exposing the goods to fruits and vegetables. The contract does exempt the defendant from liability on account of fire, water, ratage, leakage, breakage, frost, or damage to perishable property. It was, however, under the same obligation to preserve a proper temperature, and to keep it away from injurious odors, as though no such language was in the contract. *Hunter* v. *Storage Co.*, 75 Minn. 408 (78 N. W. 11); *Minnesota Butter & Cheese Co.* v. *Warehouse Co.*, 75 Minn. 445 (77 N. W. 977, 74 Am. St. Rep. 515).

Judgment affirmed.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred. MONTGOMERY, J., took no part in the decision.